UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | 13 C 505 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| TONI PRECKWINKLE, in her official capacity as Cook County Board President, and JAMES D'AMICO, individually and as Director of Cook County Department of Facilities Management, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

**M<span>EMORANDUM</span> O<span>PINION AND</span> O<span>RDER</span>**

Robert Smith brought this suit against Toni Preckwinkle, in her official capacity as Cook County Board President, and his supervisor, James D'Amico, alleging discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12111 *et seq*. Doc. 5. The court dismissed the claims against D'Amico. Doc. 34. Preckwinkle, who will be called "the County" because this is an official capacity suit, *see Sow v. Fortville Police Dep't*, 636 F.3d 293, 300 (7th Cir. 2011) ("an official capacity suit is another way of pleading an action against an entity of which the officer is an agent"), moves for summary judgment. Doc. 47. The motion is granted.

**Background**

The material facts are set forth as favorably to Smith as the record and Local Rule 56.1 permit. *See Hanners v. Trent*, 674 F.3d 683, 691 (7th Cir. 2012). Smith is currently employed as an Operating Engineer II ("OE2") at Provident Hospital of Cook County, a position to which he was promoted from Operating Engineer I ("OE1") in 1999. Doc. 52 at p. 1, ¶¶ 1-2. The County has been aware since before 2005 that Smith has a disability in his right ankle; the disability was caused by a 1973 motorcycle accident. *Id*. at p. 2, ¶¶ 5, 7. Smith's condition was

1

exacerbated in 2005 when he tore his Achilles tendon in a work-related injury. *Id*. at p. 2, ¶ 6.
Smith's right leg is a half inch shorter than his left leg. Doc. 54 at p. 13, ¶ 12.

Smith applied and interviewed for an Operating Engineer III ("OE3") position in May 2011. Doc. 52 at p. 3, ¶ 13. Smith received the lowest interview score of any applicant. *Id*. at p. 3, ¶ 14. Lee Broomfield received the highest score and was hired for the position. *Id*. at p. 3, ¶ 15. The County says that it chose Broomfield because he "impressed the interview panel," understood procedures and compliance, was "comfortable working in [a] detention facility," and was a "proven leader," and also because his experience, knowledge, and attitude made him a great fit for the position. *Id*. at p. 3 ¶ 16. Another OE3 position became available in January 2012. *Id*. at p. 4, ¶ 17. This time the County hired Pat McCarthy, who received the second highest score from the May 2011 interviews. *Id*. at p. 4, ¶¶ 17-18. A third OE3 position became available in November 2012. *Id*. at p. 4, ¶ 19. Smith applied for the position but did not submit his "CFC card" with his application, which the job posting explicitly required. *Id*. at p. 4, ¶ 21. As a result, Smith was not interviewed. *Id*. p. 4, at ¶ 22.[*] The third OE3 position has not been filled. Doc. 54 at p. 11, ¶ 4.

Smith has the qualifications to fill the OE3 position. *Id*. at p. 11, ¶ 5. Although Smith did not submit his CFC card with his application for the third OE3 position, he had a CFC card and the County knew that he had such a card. *Id*. at pp. 11-12, ¶ 6. Smith asserts that he met and exceeded every requirement listed in the OE3 job posting. *Id*. at p. 12, ¶ 8. That assertion is

---

[*] Smith's Local Rule 56.1(b)(3)(B) response disputes this factual assertion, but it does not cite the record, and thus the County's assertion is admitted. *See Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817-18 (7th Cir. 2004) ("[W]here a non-moving party denies a factual allegation by the party moving for summary judgment, that denial must include a specific reference to the affidavit or other part of the record that supports such a denial."); *Rush v. MacArthur Found.*, 2014 WL 1797581, at *2 (N.D. Ill. May 6, 2014) (disregarding assertions in the plaintiff's Local Rule 56.1(b)(3)(B) response that failed to cite specific record material); *Erwin v. U.S. Dep't of State*, 2013 WL 6452758, at *1 (N.D. Ill. Dec. 9, 2013) (same).

indisputably incorrect because the job posting states that "[p]ossession of a CFC (Chlorofluoro Carbon) card is required" and (in bold) that the applicant "[m]ust show proof of license on application, in the certification section or upload a copy of the license in the attachment section, in order to be considered," Doc. 52-2 at 1, and it is undisputed, as noted above, that Smith did not submit his CFC card with his November 2012 application even though it was explicitly required, Doc. 52 at p. 4, ¶ 21.

Smith's Local Rule 56.1(b)(3)(C) statement asserts that he "believes" that D'Amico "influenced [Smith's] test scores" and that "he was discriminated against because of his disability." Doc. 54 at pp. 12-13, ¶¶ 9-10. The paragraphs of Smith's Local Rule 56.1(b)(3)(C) statement containing these assertions, and the cited materials, offer no basis for those beliefs. Smith did testify at his deposition that "[m]ore than one coworker has told me what Mr. Damico has said about me, but he's never said it to me." Doc. 48-2 at 32. D'Amico's statements to Smith's coworkers may not be hearsay, but the coworkers' statements to Smith, which provide the only vehicle for D'Amico's statements, are hearsay and thus are inadmissible on summary judgment. *See Stephens v. Erickson*, 569 F.3d 779, 792-94 (7th Cir. 2009); *Haywood v. Lucent Techs., Inc.*, 323 F.3d 524, 533 (7th Cir. 2003). In any event, Smith does not mention the coworkers' statements in either his brief or Local Rule 56.1(b) submissions, so any reliance on those statements is forfeited.

Smith's Local Rule 56.1(b)(3)(C) statement also asserts that the County "manipulated the minimum qualifications so that they varied from the standard job description provided to applicants." Doc. 54 at p. 13, ¶ 11. For support, Smith cites the processing form for Smith's OE3 application and the County's standard job description for the OE3 position. Docs. 52-1, 52-3. Smith does not explain how those documents support his assertion that the job description

was "manipulated," and no such explanation is apparent to the court. Accordingly, the assertion is disregarded.

Smith filed a charge of discrimination with the EEOC on September 25, 2012. Doc. 52 at p. 2, ¶ 8. The EEOC issued a right-to-sue letter on October 31, 2012, *id.* at p. 2, ¶ 9, and Smith filed this suit on January 22, 2013, Doc. 1.

## Discussion

The County attacks some portions of Smith's ADA claim on timeliness grounds, Doc. 48 at 4-5, but there is no need to reach that issue because the claim, when considered against the facts the court may consider on summary judgment, plainly fails on the merits. "The ADA proscribes an employer from 'discriminat[ing] against a qualified individual on the basis of disability' in job application procedures and in the hiring or advancement of employees." *Majors v. Gen. Elec. Co.*, 714 F.3d 527, 533 (7th Cir. 2013) (quoting 42 U.S.C. § 12112(a)) (alterations in original). "As in other disparate treatment employment discrimination claims, a plaintiff may prove discrimination in violation of the ADA using one of two methods. Under the so-called 'direct' method, the plaintiff may show either direct or circumstantial evidence that points to a conclusion that the employer acted as it did for illegal reasons. The alternative way to prove discrimination is the familiar burden-shifting *McDonnell Douglas* method." *Timmons v. Gen. Motors Corp.*, 469 F.3d 1122, 1126 (7th Cir. 2006) (citations omitted).

Smith cannot meet his burden under the direct method. "Under the direct method, a plaintiff can present either direct or circumstantial evidence to meet its burden. Direct evidence requires an admission by the decision maker that his or her actions were based upon the prohibited animus." *Dickerson v. Bd. of Trs. of Cmty. Coll. Dist. No. 522*, 657 F.3d 595, 601 (7th Cir. 2011) (citations omitted). There is no direct evidence of discrimination in this case.

"However, employers are usually careful not to offer overt remarks revealing discrimination, and circumstantial evidence that allows a jury to infer intentional discrimination is also permissible. The type of circumstantial evidence that a plaintiff may produce to survive summary judgment includes: (1) suspicious timing; (2) ambiguous statements or behavior towards other employees in the protected group; (3) evidence, statistical or otherwise, that similarly situated employees outside of the protected group systematically receive better treatment; and (4) evidence that the employer offered a pretextual reason for an adverse employment action." *Ibid*. (citations omitted). A "plaintiff may show pretext by presenting evidence tending to prove that the employer's proffered reasons are factually baseless, were not the actual motivation for the discharge in question, or were insufficient to motivate the discharge." *Nawrot v. CPC Int'l*, 277 F.3d 896, 906 (7th Cir. 2002) (internal quotation marks omitted).

Smith adduces no evidence that his disability played a role in the County's decisions. As noted above, Smith "believes" that he was discriminated against because of his disability and that D'Amico improperly manipulated his test scores. Smith's subjective beliefs, standing alone, cannot defeat summary judgment. *See Hanners*, 674 F.3d at 694 ("Although Mr. Hanners may believe that the defendants' statements are evidence of racial animus, the subjective beliefs of the plaintiff … are insufficient to create a genuine issue of material fact.") (internal quotation marks omitted); *Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 548 (7th Cir. 2011) ("If the subjective beliefs of plaintiffs in employment discrimination cases could, by themselves, create genuine issues of material fact, then virtually all defense motions for summary judgment in such cases would be doomed.") (internal quotation marks omitted). Moreover, the record materials cited by Smith do not support his beliefs; in fact, the evidence undermines them. When asked at his deposition whether he had "a reason to believe that [Bromfield and McCarthy] were promoted

because they did not have a disability," Smith responded "No." Doc. 47-2 at 36. Smith added that "I just know that [Bromfield and McCarthy] were able-bodied people," and that D'Amico "didn't like me in a high place." *Ibid*. At best, this testimony could support a finding that D'Amico had personal animus towards Smith. However, the coincidence of personal animus and a protected characteristic is not evidence of discrimination based on the protected characteristic. *See Hall v. City of Chicago*, 713 F.3d 325, 333 (7th Cir. 2013) (holding that the "coincidence" of the plaintiff's protected characteristic and "personal animus" towards the plaintiff "alone does not provide an inference of … discrimination").

Smith fares no better under the indirect method. The indirect method assigns to Smith the initial burden of establishing a prima facie case of discrimination by offering evidence tending to show that "(1) he was disabled within the meaning of the ADA; (2) he applied for and was qualified for the position sought; (3) he was rejected for the position; and (4) those who were promoted had similar or lesser qualifications for the job." *Conley v. Vill. of Bedford Park*, 215 F.3d 703, 711 (7th Cir. 2000). If Smith makes a prima facie case, the burden shifts to the County, which must offer a nondiscriminatory reason for denying the promotion. *See Adelman-Reyes v. St. Xavier Univ.*, 500 F.3d 662, 665 (7th Cir. 2007). If the County meets its burden, the burden shifts back to Smith, who must provide evidence that the County's stated reason is pretext. *Ibid*. "Pretext is more than just faulty reasoning or mistaken judgment on the part of the employer; it is [a] lie, specifically a phony reason for some action." *Silverman v. Bd. of Educ. of Chi.*, 637 F.3d 729, 733-34 (7th Cir. 2011) (alteration in original and internal quotation marks omitted).

Even assuming that Smith made a prima facie case, he has not adduced evidence that would allow a reasonable jury to find that the County's proffered reason for not promoting him

was pretextual. The County says that it based its decisions on Smith's and the other candidates' "resume[s], past experience, and answers to the interview panel's questions," Doc. 48 at 10; Doc. 54 at p. 9, ¶ 28, and the fact that Smith received the lowest interview score of any candidate, Doc. 48 at 10; Doc. 54 p. 4, ¶ 14.

Smith's belief that D'Amico improperly influenced his test scores and that he was discriminated against based on his disability does not establish pretext. A plaintiff's own testimony can be enough to survive summary judgment, but only if it is based on the plaintiff's personal knowledge. *See Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 389 (7th Cir. 2010) ("[S]elf-serving testimony, if based on personal knowledge or firsthand experience, may prevent summary judgment against the non-moving party, as such testimony can be evidence of disputed material facts. But mere conclusory allegations do not constitute evidence.") (internal quotation marks and alterations omitted). Smith's testimony regarding his beliefs is insufficient because he has no personal knowledge of how the County handled test scores and has nothing, other than his own uninformed belief, to show that D'Amico improperly influenced those scores or that he was the victim of discrimination. *See Johnson v. Nordstrom, Inc.*, 260 F.3d 727, 733 (7th Cir. 2001) ("Johnson's subjective belief that she was better qualified than Bennett does not, without more, demonstrate pretext."). As noted above, the fact that a supervisor harbors personal animus towards an employee with a protected characteristic does not permit an inference that an adverse decision was based on that characteristic. *See Overly v. KeyBank Nat'l Ass'n*, 662 F.3d 856, 864 (7th Cir. 2011) (affirming summary judgment because the evidence "suggest[ed] that the conduct was the result of personal animus towards [plaintiff], rather than … discrimination").

Moreover, that Smith might have been qualified for the OE3 position does not allow a reasonable inference that the County's reason for its decision—that Smith had the lowest

interview score among all the applicants—is a "lie" or "a phony reason." *Silverman*, 637 F.3d at 733-34. Long-settled precedent holds that "where an employer's proffered non-discriminatory reason for its employment decision is that it selected the most qualified candidate, evidence of the applicants' competing qualifications does not constitute evidence of pretext unless those differences are so favorable to the plaintiff that there can be no dispute among reasonable persons of impartial judgment that the plaintiff was clearly better qualified for the position at issue." *Milbrook v. IBP, Inc.*, 280 F.3d 1169, 1180 (7th Cir. 2002); *see also Stockwell v. City of Harvey*, 597 F.3d 895, 907 n.9 (7th Cir. 2010) (same); *Hobbs v. City of Chicago*, 573 F.3d 454, 462 (7th Cir. 2009) (same); *Stephens*, 569 F.3d at 788 (same). Smith does not even come close to making the required showing.

The County says that it did not interview Smith for the OE3 position that opened in November 2012 because he did not attach his CFC card to his application, which was "explicitly required on the job posting." *Id*. at p. 6, ¶ 21. In response, Smith insists that he had a CFC card. That may be true, but the job posting required that the CFC card be submitted with the application, and Smith's failure to do so provides a legitimate basis for the County's decision not to interview him; the County was entitled to conclude that it would interview only those applicants who were able to follow instructions and submit a compliant application. *See Schaffner v. Glencoe Park Dist.*, 256 F.3d 616, 622 (7th Cir. 2001) ("As its third reason for not promoting Schaffner, the Park District argues that her handwritten resume and cover letter were unprofessional. … It is reasonable for an employer to hire an applicant based on the professional manner in which he presents himself for consideration, or to decide not to hire someone based on a lack of professionalism. We have repeatedly stated that we do not sit as a super-personnel department over an employer, and that well-worn maxim applies here.").

**Conclusion**

Smith claims that decisionmakers at the County declined to promote him to a higher operating engineering position not because he had received the lowest interview score of any applicant, but because he has a bad ankle and a bad Achilles tendon and because one of his legs is a half-inch shorter than the other leg. Smith has not adduced evidence sufficient for a reasonable jury to find for him on that claim. Accordingly, the County's motion for summary judgment is granted.

May 22, 2014

United States District Judge